Upon review of the competent evidence of record, and finding no good grounds to receive further evidence or rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, modifies and affirms the decision of the Deputy Commissioner. The decision is modified to include new findings regarding the interpretation of the settlement agreement at issue, to allow plaintiff's attorneys to submit affidavits in support of an award of attorney's fees to plaintiff, and to strike the expert witness fee for Ms. Curry.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. Defendant was a duly qualified self-insured, with Key Risk Management Services, Inc., as the servicing agent.
3. The employee-employer relationship existed between the parties at all relevant times.
4. Plaintiff's average weekly wage was $340.00, which yields a weekly compensation rate of $ 226.68.
5. Plaintiff sustained a compensable injury on 6 December 1994, in which he sustained an injury by accident to his back and neck.
6. The parties entered into an Agreement for Final Compromise Settlement and Release, on 5 March 1996, which is incorporated herein by reference as if fully set forth. Said Agreement was approved by Deputy Commissioner George T. Glenn, II, on 11 March 1996.
7. The issue for or determination is whether the previous Agreement for Final Compromise Settlement and Release, which was approved by the Commission on 11 March 1996, should be modified or set aside.
***********
Based upon all of the competent evidence adduced from the record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. On 6 December 1994, plaintiff sustained a compensable injury to his neck, shoulder, and back. Defendant advised plaintiff that this injury was accepted as compensable. However, defendant denied plaintiff's claim for bilateral carpal tunnel syndrome, which plaintiff contended arose from the same injury.
2. Plaintiff retained an attorney, Ted S. Royster, Jr., and, on 18 April 1995, filed a Form 33 Request that Claim be Assigned for Hearing. Plaintiff stated on the Form 33 that the "insurance company refuses to accept as compensatory my carpal tunnel syndrome injuries sustained as a result of a fall while on the job on 12-6-94. I am having to have surgery (4-12-95) and they are refusing to pay medical bills."
3. Defendant filed a Form 33R Response to Request for Hearing on 28 July 1995, disputing the compensability of plaintiff's carpal tunnel syndrome.
4. Neither the Form 33 nor the Form 33R contained any reference to plaintiff's back and neck injuries because these claims had previously been accepted by defendant.
5. The carpal tunnel claim was set for hearing before Deputy Commissioner George T. Glenn, II, in Lexington, North Carolina, on 26 February 1996. Before the hearing, counsel for the parties agreed to settle plaintiff's carpal tunnel claim for $2,500.00, plus payment of all unpaid medical expenses. In a letter dated 27 February 1996, Mr. Royster advised counsel for defendant, Barbara L. Curry, that plaintiff was willing to accept the $2,500.00 plus payment of medical expenses for plaintiff's carpal tunnel syndrome. Mr. Royster clarified in his correspondence that plaintiff had agreed to settle only the carpal tunnel claim, because plaintiff was still receiving medical treatment for the back and neck injuries that had previously been accepted by defendant. Ms. Curry discussed the proposed settlement with Patty Koontz, the claims representative at Key Risk Management Services, the servicing agent. At no time during the negotiations did Ms. Koontz authorize Ms. Curry to settle the back and neck claim.
6. Ms. Curry notified Deputy Commissioner Glenn that the parties had settled "all matters in dispute." The only "matters in dispute" related to the carpal tunnel claim.
7. Ms. Curry drafted an Agreement for Final Compromise Settlement and Release (hereinafter, "the Agreement"), which plaintiff, Mr. Royster, and Ms. Curry signed. Ms. Curry was authorized to negotiate, draft, and sign the Agreement on Key Risk's and defendant's behalf.
8. Ms. Curry drafted the Agreement in accordance with her discussions with plaintiff's attorney and Ms. Koontz. She intended to draft the Agreement to settle only plaintiff's carpal tunnel claim, and did not intend to settle the accepted back and neck claim.
9. The language of the Agreement is ambiguous as to whether only the carpal tunnel claim was settled or whether all injuries, including the back and neck claim, were settled. The Agreement recites that plaintiff sustained "an injury by accident" to his back and neck and that plaintiff contends that he developed carpal tunnel syndrome as a result of that "the injury by accident." The Agreement also recites that the parties have agreed to settle all claims as a result of plaintiff's "alleged injury by accident (underline added), and that "defendant-insurance carrier" (there was no carrier involved) agreed to pay $2,500.00 and unpaid medical bills in the treatment of "this injury." The Agreement then provides that plaintiff settles all claims arising from the "alleged injury by accident" and that defendant is released from all further liability as a result of the "alleged injury by accident" (underlines added). The use of "alleged injury by accident" is ambiguous in this Agreement. "This injury" and "alleged injury by accident" may fairly be interpreted to refer to the disputed carpal tunnel claim described in the Agreement and not to the undisputed back and neck "injury by accident" referenced earlier in the Agreement. The Agreement may thus be interpreted to settle only the carpal tunnel claim.
10. Resolving the ambiguous Agreement in plaintiff's favor allows the Agreement to be interpreted as the parties clearly intended: only the carpal tunnel syndrome claim was compromised and settled for the sum of $2,500.00 and unpaid medical expenses.
11. In May 1996, plaintiff attempted to refill a prescription for pain medication for the neck and shoulder, but the servicing agent refused payment. Mr. Royster contacted Ms. Curry about this problem and reiterated that only the carpal tunnel claim had been settled. Ms. Curry sent correspondence to the servicing agent regarding the refusal to pay for plaintiff's prescription.
12. When contacted by Ms. Curry, Ms. Koontz contended that the language of the Agreement would allow defendant to deny plaintiff's entire claim, including the back and neck claim, despite any understanding to the contrary. Ms. Curry explained to Ms. Koontz that the Agreement was intended to settle plaintiff's claim for carpal tunnel claim only, and not the back and neck claim. Ms. Curry advised Ms. Koontz by letter dated 20 November 1996, stating, "We have accepted the claim for his back and neck and we cannot now deny these claims based on the clincher agreement which was specifically for the carpal tunnel syndrome."
13. Ms. Koontz testified that she had not given Ms. Curry authority to settle only part of the claim and that she had intended to settle plaintiff's entire claim. This testimony is not persuasive in light of the parties' clear intent to settle the carpal tunnel claim only.
14. Ms. Koontz knew or should have known that the Agreement was intended to settle plaintiff's carpal tunnel claim only, yet she continued to deny plaintiff's claim for medical benefits for his back and neck injuries, which had been accepted as compensable. Given the clear intent of the parties in entering into the Agreement, Key Risk's refusal to pay medical expenses for the accepted back and neck claim was unfounded and without basis. Ms. Curry specifically advised Ms. Koontz that Key Risk's interpretation of the Agreement was inconsistent with the parties' intent. Key Risk's unfounded denial of plaintiff's back and neck claim necessitated a hearing before Deputy Commissioner Dollar.
15. Plaintiff's claim for medical expenses for his compensable back and neck injuries was defended without reasonable ground due to the servicing agent's stubborn, unfounded litigiousness. An attorney's fees award for plaintiff is justified.
***********
Based on the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. The 5 March 1996 Agreement for Final Compromise and Settlement and Release is ambiguous and should be construed against defendant and in favor of plaintiff and to effectuate the clear intent of the parties. Accordingly, the Agreement is interpreted to settle plaintiff's carpal tunnel claim only and not to settle plaintiff's back and neck claims. Defendant may not rely on the Agreement to avoid further liability for the back and neck injuries resulting from the accepted injury by accident on 6 December 1994.
2. As a result of the stubborn, unfounded litigiousness of the servicing agent, defendant should be required to pay plaintiff's reasonable attorney's fees. G.S. § 97-88.1. The Commission requires additional information from plaintiff's attorneys as to time expended in prosecuting the back and neck claim. G.S. §§ 97-88, 97-88.1.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall continue paying for all medical expenses reasonably required for plaintiff's back and neck injuries resulting from the admittedly compensable injury by accident on 6 December 1994, including renewals of prescriptions for pain.
2. Defendant shall pay a reasonable attorney's fee to J. Calvin Cunningham for his representation of plaintiff at the hearing before Deputy Commissioner Dollar. In addition, defendant shall pay a reasonable attorney's fee to Ted. S. Royster, Jr., for his representation of plaintiff in connection with the back and neck claim, including time spent assisting Mr. Cunningham in preparation for the hearing before the deputy commissioner. Unless the parties hereinafter reach agreement as to payment of plaintiff's reasonable attorney's fees, Mr. Cunningham and Mr. Royster shall submit affidavits to the undersigned within thirty (30) days from the date of filing of this Opinion and Award. These affidavits shall state the hours expended subsequent to Key Risk's denial of medical expenses for the back and neck claim.
3. Defendant shall pay the costs.
This the ___ day of August 1999.
 S/_____________ RENEE C. RIGGSBEE COMMISSIONER
CONCURRING:
S/_____________ J. HOWARD BUNN, JR. CHAIRMAN
S/_____________ BERNADINE S. BALLANCE COMMISSIONER